### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 10-10127-MLW |
| | ) | |
| | ) | |
| DAVID WOOD | ) | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM
## AND REQUEST TO FILE LATE

The government is filing this supplemental sentencing memo to address what appears to be certain guideline issues that the defendant will raise in connection with tomorrow's sentencing. The undersigned returned from a week from vacation on Saturday hoping to find a Sentencing Memorandum (either an initial or one that responded to the government's filing of June 2). It has just received that memo.  While not limiting defense counsel to any particular issue, the government will therefore respond to issues that appear to be germane to sentencing:

1. **The points assessed against Wood for his juvenile offenses.**  Probation has properly assessed Wood with points resulting from any period of juvenile commitment of 60 days or more in which he was released within 5 years of the commitment of the offense of conviction.  See PSR at ¶¶33-36.  See also USSG §4A1.2(d) (requiring two points for any juvenile period of incarceration of more than 60 days where defendant was released from incarceration within 5 years of the offense of conviction);

-1-

USSG §4A1.2(k) (for offenses committed prior to age 16 in which the commitment period exceeded 60 days, the operative date is the date on which the defendant was last released from confinement).

The only complication here is that the defendant was on DYS commitment on *four* cases simultaneously (see paragraphs 33, 34, 35, and 36 of the PSR) violated the conditions of his DYS Parole *six* times, and was recommitted to DYS custody for more than 60 days *four times with each of those commitments resulting in his release after February 27, 2005* (the five year cut-off under USSG §§4A1.2(d) and 4A1.2K). In such circumstances, Application Note 11 to USSG 4A1.2 requires that violations be applied to the specific case that "will result in the greatest increase of criminal history points." Here, because the defendant was put back in custody for periods of more than 60 days while he was on DYS parole for four separate cases, probation has done exactly what Application Note 11 provides–spread the violations over separate case in a way that maximizes their effect.

To the extent the defendant takes any issue with Probation's methodology as applied to multiple violations where there were multiple cases as well, it is refuted by United States v. Parson, 288 F.3d 818 (6th Cir. 2002). The defendant there had been convicted of two separate violent felonies 19 days apart and was placed on extended period of probation on each of these two cases. But for subsequent violations applied to these

convictions simultaneously, the cases would have been too old to
score and the defendant would not have been treated as a Career
Offender.

However, violations did occur.  During the probationary
period on both of the crimes of violence, Parson was violated and
committed on several occasions with all of the violations being
applied to both of the earlier convictions.  Because of the age
of the two predicates, the defendant argued that his violations
could only be assessed against <u>one</u> of the underlying convictions
and that one was therefore still too old to be counted.  The
district court agreed based on the language of Application Note
11 without considering the fact that more than one probation
violation had taken place.

On appeal, the Sixth Circuit reversed because it concluded
that the district court had failed to apply Application Note 11
separately to each probation violation:

> However, Parson's parole was revoked on multiple
> occasions. On each revocation, according to the
> application note, the additional time sentenced is to
> be added to the sentence that would create the greatest
> increase in criminal history points. Therefore, the
> time added from the first revocation (over 4 years)
> would apply to only one of the two prior felonies.
> However, the second time that parole was revoked (and
> the rule applied again), the additional time (over 1
> year) would be applied to the second of the two prior
> felonies, and so on. Since each of these two sentences
> would finally be over one year and one month, both
> should be counted.

288 F.3d at 822.  Based on the correct implementation of

-3-

Application Note 11 to multiple probation violations, the Court reversed the judgement below and remanded so the defendant could be sentenced as a Career Offender.

The <u>Parson</u> decision reflects that the basic premise behind Application Note 11 (that a defendant should be punished for one act constituting a probation violation once, even if it applies in multiple cases) simply doesn't apply when multiple violations have occurred. Because that's what happened here, and the guideline properly take into account the multiple violations by assigning them to the multiple cases that Wood was on parole for, the criminal history calculations are correct.

**2.   <u>The defendant's crimes of violence</u>.**   This is not a case involving either the Armed Career Criminal Statute or the career Offender Guideline.   The defendant's Base Offense level was increased however, by his two crimes of violence (Attempted Armed Robbery and Assault and Battery Dangerous Weapon (gun)/larceny from the person) under USSG 2K2.1.   <u>See</u> PSR at 38, 39.   The only argument made that the ABDW case is no longer a crime of violence. He is wrong on both counts.

That argument is flawed because it is directly contradicted by controlling First Circuit precedent. decisions from the First Circuit (which remain unaffected by <u>Holloway</u> as of this date) make clear that the additional offenses the Petitioner acknowledges he committed are properly defined as categorical

-4-

crimes of violence that were properly counted by both this Court and the First Circuit in determining (and then summarily affirming) that the defendant was a career offender.[4] <u>See</u> <u>United States v. Glover</u>, 558 F.3d 71 (1st Cir. 2009)(held, the Massachusetts crime of ABDW qualifies as a "crime of violence" for career offender purposes under the residual clause, because "[i]t is a purposeful offense * * * that involves conduct at least as aggressive and violent as the conduct at issue encompassed by the enumerated crimes") <u>United States v. Am</u>, 564 F.3d 25, 33-34 (1st Cir. 2009), <u>cert</u>. <u>denied</u>, 130 S. Ct. 1724 (2010) ("Under Massachusetts law, assault by means of a dangerous weapon is a general intent crime and requires either intentional and unjustified use of force upon another person or the "intentional commission of a wanton or reckless act * * * causing physical or bodily injury to another." <u>Commonwealth. v.</u> <u>Ford</u>, 424 Mass. 709, 911 , 677 N.E.2d 1149 (1997) (quotation omitted). Because the state, under either of these two theories, had to show that Am acted intentionally, his conviction for assault by means of a dangerous weapon thus constituted a "crime

---

[4]The government acknowledges and wishes to alert the Court that the First Circuit recently requested supplemental briefing in <u>United States v. Dancy</u>, No. 09-2628, on <u>Holloway</u>'s impact on the Massachusetts crimes of Assault and Battery with a Dangerous Weapon ("ABDW") and Assault and Battery on a Police Officer ("ABPO") under the ACCA. As indicated below, however, even the most radical expansion of <u>Holloway</u> would not affect Simms' status as a career offender under the advisory guidelines because of his various other convictions.

of violence" for purposes of career offender status); <u>United States v. Almenas</u>, 553 F.3d 27 (1st Cir. 2009)(holding that a conviction for resisting arrest qualified as "crime of violence" under the Career Offender sentencing guideline because, among other things, <u>Begay</u>'s purposefulness requirement is met in crime of resisting arrest because the offender must act knowingly to prevent officer from effecting arrest); <u>United States v. Gendraw</u>, 330 F.3d 770 (1st Cir. 2003)(larceny from the person is a crime of violence).  <u>See generally</u> <u>United States v. Jarmon</u>, 596 F.3d 228, 231-32 (4th Cir. 2010) (rejecting defendant's argument that "larceny from the person does not involve purposeful, violent, and aggressive conduct," and holding that larceny from the person is a violent felony, because it "typically involves such conduct");<u>United States v. Patillar</u>, 595 F.3d 1138, 1140 (10th Cir. 2010) ("Larceny from the person is purposeful because it requires "intent to deprive another" of his property. . . . And when the taking is from a person, the conduct is violent and aggressive because it creates a significant risk of confrontation between thief and victim. . . . Our fellow circuits have consistently interpreted the residual clause of § 4B1.2(a)(b) as encompassing larceny from the person. . . . Accordingly, we affirm the district court's treatment of larceny from the person as a crime of violence."); <u>United States v. Thrower</u>, 584 F.3d 70, 75 (2d Cir. 2009) (holding that

"[b]ecause it is defined by conduct that presents a serious potential risk of violence and is roughly similar to burglary, larceny from the person meets both requirements for a violent felony under the residual clause of the ACCA").

    3. **Motion for Leave to file Supplemental Sentencing Memorandum Late**. The government respectfully moves for leave to file this memorandum late.  As grounds therefore, the government states that it did not receive the defendant's memorandum until earlier this afternoon, did not receive the defendant's objections to the PSR until the final version was filed on June 13, 2011, and did not receive a copy of the PSR until Saturday, June 19, 2011 because the undersigned AUSA was on vacation.

        Respectfully submitted,

        CARMEN M. ORTIZ
        UNITED STATES ATTORNEY

By:   /s/John A. Wortmann, Jr.
        JOHN A. WORTMANN, JR.
        Assistant U.S. Attorney
        One Courthouse Way
        Boston, MA
        (617) 748-3207

**CERTIFICATE OF SERVICE**

The government hereby certifies that the foregoing was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

                                    /S John A. Wortmann, Jr.  6/1/11